## A96A1912. ALFORD v. THE STATE.
(480 SE2d 893)

ANDREWS, Chief Judge.

Curtis Alford appeals from the judgment entered on a jury verdict finding him guilty of nine counts of burglary and one count of attempted burglary.

1. Alford claims he was entitled to a new trial because the jury's guilty verdict was against the weight of the evidence and was contrary to principles of justice and equity. On appeal, we do not reweigh the evidence by resolving conflicts in the evidence or by determining the credibility of witnesses. Rather, we accept the jury's factual determinations by viewing the evidence in the light most favorable to the jury's verdict and determine if the evidence, so viewed, was sufficient to support the verdict. Thus viewed, the following evidence was produced in support of the convictions:

Under Count 1 of the indictment, the State alleged that Alford and co-indictee, Arthur Hall, burglarized Covington Credit, a busi-

ness located in LaGrange, on or about February 25, 1994. An employee of the business testified that, when she arrived to open the business on the morning of that date, she discovered the back door had been kicked in and a telephone, a radio, and a coffeemaker were missing from the business. The State produced testimony and a statement from Hall, who entered a guilty plea to this count prior to trial, that on the date of the charged burglary he and Alford broke into the business, stole a telephone and a radio, and then left the stolen items in a lot near the business. Alford's brother testified that Alford told him he broke into Covington Credit. A radio found by police in a lot a couple of blocks from the business shortly after the burglary was identified by the employee as the radio taken in the burglary.

Under Count 2, the State alleged that Alford and Hall burglarized the Pig & Chic restaurant in LaGrange on or about March 12, 1994. An employee of the business testified that, when he arrived to open the business on that date, someone had broken in the front door, ransacked the business, and stolen the cash register. Alford's girl friend testified that she was with Alford and Hall on the date of the burglary; that she saw Hall break down the door of the business, and that Hall and Alford went inside the business saying they were going to get some money.

Under Count 3, the State alleged that Alford and Hall attempted to burglarize Yates Grocery store in LaGrange on or about March 12, 1994. A part owner of the store testified that she received a call on that date in the middle of the night after the store's alarm system went off. Upon arrival at the store, she discovered that someone had broken down the back door of the store. Alford's girl friend testified that she was with Alford and Hall on the date of the burglary, and that she saw Hall kick open the door to the store while Alford stood back and waited. She testified that, when the alarm went off, everybody ran, and she saw Hall and Alford laughing about what happened. The State also produced testimony from a police detective who testified that the girl friend gave him a statement in which she said that she saw both Alford and Hall kick open the door to the store. Alford's brother also testified that he saw Alford and Hall kick the door to the store. Hall testified and admitted he gave a statement to a detective stating that Alford was with him at the Yates store and helped him kick the door, but he claimed the statement was false and that Alford was not involved. A recorded statement given by Hall to the detective was admitted in which Hall stated that he and Alford broke open the door to the Yates store.

Under Count 4, the State alleged that Alford and Hall burglarized the LaGrange Headstart building on or about March 8, 1994. A Headstart employee testified that on that date she discovered that

someone had broken into the building, ransacked it, and taken some items of food. Alford's brother testified that on the date of the charged burglary he was with Alford, Hall, and others at the Headstart building. He testified that he heard some of the group trying to break a window in the back of the building and calling for Alford; that he saw Alford go back with the group, and that Alford told him he threw a brick through the window. He testified that he saw Alford with some apples and oranges he got from the building. Hall, who pled guilty to this count prior to trial, testified and admitted he told a detective that Alford helped him break into the Headstart building on March 9, but he claimed the statement was false and that Alford was not involved. .

. After the jury was unable to reach a verdict on Count 5, the trial court declared a mistrial on the burglary charge alleged in Count 5 of the indictment.

Under Count 6, the State alleged that Alford burglarized The Added Touch, a business located in LaGrange, on or about February 7, 1994. One of the owners of the business testified that on that date she was called at home in the middle of the night by police, and, upon arrival at the business, she discovered that the back door of the business had been broken down and several book bags were missing from the business. The State produced testimony from a juvenile who said that on the date of the charged burglary Alford told him to break into The Added Touch; that he and Alford broke down the door to the business, and that he went inside and got some book bags and gave them to Alford, who was waiting on the back porch near the door. Alford's brother testified that Alford gave him some book bags that Alford said he got from the juvenile. After police recovered the book bags from Alford's brother, the bags were identified by the owner of the business as the items taken in the burglary.

Under Count 7, the State alleged that Alford burglarized the Newman Construction Company, a business located in LaGrange, on or about January 6, 1994. An employee of the business testified that, when he came into work on the morning of that date, he discovered that someone had broken into the business by breaking through a back window in a storage area and then kicking open a door into an office area. He discovered that a radio was missing from the business. The employee identified a radio that police recovered from Alford's residence as the radio taken in the burglary. Another employee of the business also identified the radio as the one taken in the burglary and testified that it had been there for five or six years. When the radio was recovered by police, it was covered with graffiti, including Alford's street name, "Hammer," which was not on the radio before it was taken in the burglary. Alford's brother testified that he saw Alford bring the radio to their residence and that, when he did so, it

did not have any graffiti on it. Alford's girl friend testified that Alford left the radio over at her residence for a while, and that she saw him put the graffiti on it. When asked if Alford told him that the radio came from Newman Construction Company, Alford's brother replied that he "[p]robably did but not as I can recall." Alford and his mother testified that he bought the radio at a yard sale in December 1993.

Under Count 8, the State alleged that Alford committed a second burglary against the LaGrange Headstart on or about January 21, 1994. A Headstart employee testified that, when she arrived at the building on that date, she discovered that someone had broken into the building by throwing a brick through the window, and that some items including a cordless telephone were missing. The telephone was recovered by police after the burglary, and the employee identified it as the telephone taken in the burglary. Alford's girl friend testified that the phone identified by the employee was given to her by Alford and that she subsequently gave it to a friend. A police detective testified that they recovered the telephone from the friend.

Under Count 9, the State alleged that Alford burglarized Medicare Rental Supply, Inc., a business located in LaGrange, on or about March 8, 1994. An employee of the business testified that, when he arrived for work on the morning of that date, he discovered that someone had broken into the business and that a cash box was missing. The employee identified a cash box that police recovered from Alford's girl friend as the cash box taken in the burglary. Alford's girl friend testified that, around the date of the burglary, Alford told her to go to a location in LaGrange and pick up and hold the cash box, which she found hidden in some bushes. A police detective testified that the girl friend told him she found the cash box at Alford's request, and that she also told him Alford had entered the Medicare Rental Supply business. Alford's brother testified that Alford told him he broke into the Medicare Rental Supply business.

Under Count 10, the State alleged that Alford burglarized Alfa Insurance Company, a business located in LaGrange, on or about March 7, 1994. An employee of the business testified that, when he arrived at the business on the morning of that date, he discovered that the back door had been kicked in, and about $65 in cash was missing. He did not find anything else missing at that time. Alford's girl friend testified that Alford told her he went into the Alfa Insurance Company business and "got some money out of it." A police detective testified that he interviewed Alford's girl friend after the burglary, and she told him that Alford had entered the Alfa Insurance Company business and had taken some checks. Following this interview, the detective contacted Alfa Insurance a couple of days after the burglary and asked an employee to see if any checks were missing. The employee discovered that a book of checks was missing.

Under Count 11, the State alleged that, on or about March 4, 1994, Alford burglarized the Law Office of Brian Lockerbie located in LaGrange. Lockerbie testified that he received a call in the evening of that date indicating that the burglar alarm at his office had gone off. When he arrived at his office, he discovered that the back door to the office had been kicked in. He did not find anything missing. Alford's girl friend testified that she was with Alford on the date of this burglary, and that she saw him kick in the door to the law office and step inside the doorway and set off the alarm. Alford's brother testified that Alford told him he was about to go into the Lockerbie Law Office, but a security light came on and he left.

On the attempted burglary and on all of the burglaries charged in the indictment, the State produced evidence that Alford was not authorized to enter any of the business premises. Alford testified and denied that he had any involvement in any of the burglaries or the attempted burglary.

As to the attempted burglary charged in Count 3 and the burglaries charged in Counts 1, 2, 4, 6, 9, 10, and 11, the State produced direct evidence of Alford's commission of the offenses and additional circumstantial evidence of guilt sufficient for a rational trier of fact to find Alford guilty beyond a reasonable doubt. OCGA §§ 16-7-1; 16-4-1; *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

As to the burglaries charged in Counts 7 and 8, the State produced circumstantial evidence of Alford's guilt sufficient to exclude every other reasonable hypothesis save that of his guilt and sufficient to allow the jury to find him guilty beyond a reasonable doubt. OCGA § 24-4-6; *Wells v. State,* 151 Ga. App. 416, 417 (260 SE2d 374) (1979); *Jackson v. Virginia,* supra.

2. Alford contends the trial court erred by allowing the State, over his objection, to present hearsay testimony from a police detective. The detective repeated what Alford's brother and girl friend told the detective they were told by Alford. Although the detective testified that Alford's girl friend and brother both gave him statements indicating that Alford told them about his involvement in certain burglaries, the detective did not testify as to the content of any statement given to him by Alford's brother. In any event, the detective's testimony as to the statements was not subject to a hearsay objection.

Alford's girl friend and brother testified at trial and were subject to cross-examination by Alford as to the truth of their testimony. Accordingly, the testimony by the detective as to these witnesses' prior statements, whether showing the statements to be consistent or inconsistent with the witnesses' testimony, was admissible under *Gibbons v. State,* 248 Ga. 858 (286 SE2d 717) (1982) and *Cuzzort v.*

*State*, 254 Ga. 745 (334 SE2d 661) (1985). "Under *Gibbons*, supra, a prior inconsistent statement made by a witness who takes the stand and is subject to cross-examination is not limited in value to impeachment, but is admissible as substantive evidence of the matter asserted. Under *Cuzzort*, supra, 'where the veracity of a witness is at issue, and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement of the witness is admissible (as substantive evidence).' [Cit.]" *Foster v. State*, 216 Ga. App. 26, 28 (453 SE2d 482) (1994); *Moak v. State*, 222 Ga. App. 36, 41 (473 SE2d 576) (1996). The trial court did not err by overruling Alford's hearsay objection.

3. Alford contends the trial court should have granted his motion for a mistrial because the State improperly attempted to impugn his character by introducing testimony that he may have committed another burglary not charged in the indictment. During the State's direct examination of an employee of Medicare Rental Supply, Inc., the prosecutor asked the employee to describe what he saw when he arrived at the business on the morning after the burglary. The employee responded that the business did not look as bad as it did after a previous burglary because "I guess this time they knew where everything was. . . ."

This was not an attempt by the State to introduce evidence that Alford committed a previous burglary at the business. Even if the witness' testimony implied that the present burglary was committed by the same people who had previously burglarized the business, the testimony was not responsive to the question posed by the prosecutor, so it did not place Alford's character in issue under OCGA § 24-9-20 (b). *Nelson v. State*, 204 Ga. App. 409, 410 (419 SE2d 502) (1992). Moreover, even assuming the testimony placed Alford's character in issue, the trial court gave precautionary instructions to the jury sufficient to cure any error. The trial court did not abuse its discretion in denying the motion for a mistrial. Id. at 410.

4. Alford contends the trial court erred by refusing his request to charge the jury to consider his explanation, insofar as it was consistent with the circumstantial evidence, in determining whether there was a reasonable hypothesis other than his guilt. The trial court charged the jury as to its duty to consider the evidence admitted as to each separate count in the indictment, and charged the jury that, as to any count based solely on circumstantial evidence, to warrant a conviction on circumstantial evidence alone, the evidence must not only be consistent with the theory of guilt but must exclude every other reasonable hypothesis save that of guilt. OCGA § 24-4-6. The charge as given by the trial court fully and correctly covered the applicable principles of law. There was no error in refusing to give the requested charge.

5. Alford claims the trial court erred by denying his motion to sever the offenses joined in the indictment.

A defendant has an absolute right to severance of offenses joined for trial where the offenses have been joined solely because they are similar in nature. *Dingler v. State*, 233 Ga. 462, 463 (211 SE2d 752) (1975); *Cooper v. State*, 253 Ga. 736, 737 (325 SE2d 137) (1985). Where, however, the joined offenses are not just similar in nature but are based on the same conduct, or on a series of acts connected together, or evince a common scheme or plan, there is no absolute right to severance. Rather, severance lies within the sound discretion of the trial court, which must determine whether or not severance would be appropriate to promote a fair determination of guilt or innocence as to each offense. *Nichols v. State*, 210 Ga. App. 134 (435 SE2d 502) (1993); *Lundy v. State*, 265 Ga. 30 (453 SE2d 466) (1995); *Dingler*, supra at 463.

Here, the joined offenses were ten burglaries and one attempted burglary all occurring in the City of LaGrange between January 6, 1994 and March 14, 1994. Seven of the eleven offenses occurred within ten days of each other. All of the burglaries and the attempted burglary involved businesses entered after the close of business hours in which entry was accomplished by forcefully smashing in a door, a window, or both. Other than checks taken in one burglary, none of which was reported cashed, no items of substantial value were taken in any of the burglaries. Based on these similarities, the trial court did not abuse its discretion in denying the motion to sever. *Nichols*, supra at 135; *Watkins v. State*, 187 Ga. App. 108 (369 SE2d 356) (1988).

6. Alford, who is black, claims the trial court erred in denying his motion brought pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) contending the State discriminated on the basis of race by exercising its peremptory strikes during jury selection to exclude black potential jurors.

The trial court concluded that Alford had established a prima facie inference that the strikes were exercised with racially discriminatory intent and required the State to give race-neutral reasons for the strikes. *Chandler v. State*, 266 Ga. 509, 510 (467 SE2d 562) (1996). Defense counsel conceded at trial that the State articulated a race-neutral reason for striking one of the four black potential jurors struck by the State. As to the remaining three black potential jurors, Alford contends the trial court erred in accepting as race-neutral the reasons given by the State for the strikes. The reason given for one strike was that, when the prosecutor asked the prospective juror whether she was married or single, she laughed at the question and said she did not know if she was single or married or what her personal status was. The prosecutor stated that, because she felt the

response was bizarre and the laughter inappropriate, she did not believe the prospective juror would give the case her full and serious attention. The prosecutor's good faith concern that the juror would not properly consider the case was a proper race-neutral reason for the strike. *Richard v. State*, 223 Ga. App. 98 (476 SE2d 849) (1996). Another black prospective juror was struck because a law enforcement officer informed the prosecutor that he had dealt with this prospective juror over the years in his capacity as a police officer and knew her to be "very anti-law enforcement." A concern that a juror, because of prior negative involvement with law enforcement, could not be impartial in considering the charges against the defendant is a race-neutral reason for exercising the strike. See *Cooper v. State*, 220 Ga. App. 531, 532 (469 SE2d 790) (1996). The last strike was exercised in the selection of one alternate juror, who was eventually seated on the jury during the trial. According to the prosecutor, this strike was exercised, not because the prospective juror was black or for any other reason personal to the prospective juror, but because the next prospective juror was known by the prosecutor and had indicated during voir dire that she had worked for the prosecutor's husband. The prosecutor stated that, because of her prior knowledge about the next prospective juror, she believed this person would be fair and would make a good juror. The prosecutor also knew defense counsel was out of strikes. Accordingly, the prosecutor exercised the strike to obtain the opportunity to select the next prospective juror about whom she had favorable information. This was a clear and reasonably specific explanation for the strike based on a factor other than race and thus satisfied the requirement for a race-neutral reason. Id. at 532. Under the clearly erroneous standard, the trial court did not err in finding that the reasons given by the State were race-neutral and in denying the *Batson* challenge. *Johnson v. State*, 266 Ga. 775, 777 (470 SE2d 637) (1996).

*Judgment affirmed. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 3, 1997.

*Wesley T. Leonard*, for appellant.

*Peter J. Skandalakis*, District Attorney, *Monique L. Fouque, Assistant District Attorney*, for appellee.