## A01A0010. CARTER v. THE STATE.
## A01A0011. FREEMAN v. THE STATE.
### (548 SE2d 102)

ANDREWS, Presiding Judge.

Aldraco Zokenda Carter and Jameel Zaheem Freeman were jointly indicted and tried and both found guilty of hijacking a motor vehicle (Count 1), aggravated assault (Count 4), two counts of kidnapping (Counts 6 and 7), and fleeing from police (Count 10). Freeman was also found guilty of driving with a suspended license (Count 11), reckless driving (Count 12), speeding (Count 13), and failure to stop at a traffic control device (Count 14). Their separate appeals have been consolidated for consideration in this opinion.

The State presented the following evidence in support of the convictions. Testimony from the victims showed that four masked men in a white van approached Wesley Wicker's car, a green Pontiac, while the car was parked at Walnut Grove Apartments and was occupied by Wicker, Jonathan Carroll, and Patrice Jackson. The four men, who were armed with handguns, forced Wicker, Carroll, and Jackson out of the car at gunpoint. The men then took Wicker's car and drove away — two of the men in the car and two in the van.

The victims immediately notified the police. Police officers testified that they spotted the white van and the green Pontiac within minutes of being notified and began chasing the vehicles with emergency lights and sirens activated as the vehicles entered onto Interstate 75. On the entrance ramp to I-75, the van passed the car on the emergency shoulder and led police on a chase reaching speeds of at least 100 mph. The van exited I-75, ran a red light, then stopped in the front yard of a house. At that point the driver of the van, Freeman, fled on foot, but was captured within a few minutes. Carter, who was the front seat passenger in the van, surrendered to police when the van stopped. After Carter was arrested and given the warnings required by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), he gave police a written statement stating that "I was picked up from my house, we rode to Walnut Grove, then we left, and then we were leaving going up the road, the green car came

behind us."

While chasing the green Pontiac, police were able to see that it was occupied by two males, both of whom fled on foot and eluded police after the car stopped. A police officer later identified the driver of the car as Miquiheus Kiwanis Bell, whose wallet was found in the van. Bell, who was named as a co-defendant in the indictment, testified that the white van belonged to Wholesale Laundry, where he was employed, and that he had lent the van to Freeman.

Carroll and Jackson identified the white van occupied by Carter and Freeman as the same van occupied by the four masked men who forced them from Wicker's car at gunpoint.

### Case No. A01A0010

1. Carter contends his written statement given to police with the benefit of *Miranda* warnings should have been excluded because it was tainted by an earlier oral statement he gave to police without the benefit of *Miranda* warnings which was excluded by the trial court.

We find no error in the admission of the subsequent statement. The trial court excluded the first custodial statement on the basis that it was given without the benefit of *Miranda* warnings. As to the admissibility of the second statement given with *Miranda* warnings, the relevant issue is whether, under all the circumstances, the second statement was voluntary. *Oregon v. Elstad*, 470 U. S. 298, 309, 318 (105 SC 1285, 84 LE2d 222) (1985); *Livingston v. State*, 264 Ga. 402, 407-408 (444 SE2d 748) (1994). The voluntariness of a subsequent statement given with the benefit of *Miranda* warnings is not tainted or compromised by a prior unwarned statement unless the prior statement was obtained by coercive police tactics that rendered it involuntary under due process standards. *Oregon v. Elstad*, 470 U. S. at 314, 317-318; *Moore v. State*, 263 Ga. 11, 12 (427 SE2d 766) (1993); *Metheny v. State*, 197 Ga. App. 882, 885-886 (400 SE2d 25) (1990).

The record supports the trial court's conclusion that no such coercive tactics were employed in obtaining the prior statement and that both the prior and subsequent statements were voluntary. Accordingly, the subsequent statement was properly admitted.

2. Carter, who is African-American, claims the State violated his rights under the Equal Protection Clause of the U. S. Constitution by exercising peremptory jury selection strikes to exclude African-American potential jurors from the jury on the basis of race. He claims the trial court erred by denying his motion making this claim under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

A *Batson* challenge initiates a three-step process requiring first that the party challenging the strikes establish a prima facie inference that the strikes were exercised with racially discriminatory intent. If a prima facie case of racial discrimination is established, under the second and third steps, the burden of production shifts to the proponent of the strikes to give race-neutral reasons for the strikes, and the trial court then considers the reasons given and decides whether the challenger has proven discriminatory intent. During this process, the burden of persuasion as to discriminatory intent does not shift from and remains with the challenger.

*Griffeth v. State*, 224 Ga. App. 462, 463 (2) (480 SE2d 889) (1997).

The trial court concluded that Carter had established a prima facie inference that the strikes were exercised with racially discriminatory intent and required that the State explain its reasons for striking the African-American potential jurors. On appeal Carter claims that two potential jurors were struck by the State with racially discriminatory intent, John Q. Jones and Choslen K. Scott. The State explained that it struck Jones because he had friends who lived in the same apartments where the defendants lived and that he had visited these apartments several times. Based on these facts, the prosecutor stated he was concerned that Jones might know the defendants or might realize during the course of the trial that he had some knowledge about the defendants. As for striking Scott, the State explained that she had a shoplifting conviction which she failed to disclose in her jury questionnaire and that she had been prosecuted on this offense by the same district attorney prosecuting the present case. The State further explained that Scott frequented the apartments where the defendants lived and said she recognized Carter's face.

The trial court concluded that the State's explanations for the strikes were race-neutral and that Carter did not carry the burden of proving that the State struck the potential jurors with racially discriminatory intent. The standard of review applied to these conclusions is whether the trial court committed clear error. *Johnson v. State*, 266 Ga. 775, 777 (470 SE2d 637) (1996). Finding no clear error, we conclude the trial court correctly denied the *Batson* challenge.

3. Contrary to Carter's contention, the evidence was sufficient to support his convictions for the offenses of hijacking Wicker's car by use of a firearm and aggravated assault on Jackson with a firearm.

Although none of the victims identified Carter as one of the four masked men who arrived in the white van and participated in hijacking Wicker's car at gunpoint, the van was spotted by police and pursued shortly after the hijacking occurred. Carter was arrested by

police as he exited the van after a high-speed chase. The victims identified the van as the one used in the hijacking, and Jackson testified that a firearm was pointed at her during the hijacking. Moreover, Carter's statement to the police placed him at the apartments where the hijacking occurred and confirmed that, when he left the apartments, the vehicle he occupied was being followed by a green car. This was consistent with testimony by the victims that the van and Wicker's hijacked green Pontiac left the apartments together.

The evidence, both direct and circumstantial, was sufficient for the jury to find beyond a reasonable doubt that Carter either directly committed the hijacking and the aggravated assault or was a party to those crimes. OCGA §§ 16-2-20; 16-2-21; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Because there was no evidence that the car was taken from Wicker by means other than hijacking with a firearm, the trial court did not err by refusing to give a charge on the lesser included offense of theft by taking of an automobile. *Edwards v. State*, 264 Ga. 131, 132-133 (442 SE2d 444) (1994).

5. Carter contends that, because he was only a passenger in the van during the high-speed chase with police and was not the driver, the trial court erred by denying his motion for a directed verdict on the charge of fleeing from police in violation of OCGA § 40-6-395 after being given visual and audible signals to stop the van.

There was ample evidence that Carter participated in the car hijacking and assault and that he left the scene of the crimes as a passenger in the van driven by Freeman. However, there is no evidence that Carter did anything other than occupy the passenger seat of the van while Freeman drove the van and attempted to elude police in a high-speed chase. There was no evidence that Carter attempted to dispose of evidence during the chase, nor did he flee or resist arrest after the van stopped. Compare *Bivins v. State*, 166 Ga. App. 580 (305 SE2d 29) (1983); *Ford v. State*, 163 Ga. App. 745 (296 SE2d 85) (1982). Accordingly, contrary to the evidence implicating the passengers in *Bivins* and *Ford*, there was no evidence that Carter acted in concert with the driver in this case in an effort to flee from the police. Carter was entitled to a directed verdict in his favor on the charge of fleeing from police, and his conviction on this charge must be reversed.

## Case No. A01A0011

6. Freeman claims that his convictions for hijacking a motor vehicle and kidnapping Wicker must be reversed because they either merged as a matter of fact into his convictions for aggravated assault on Wicker or were inconsistent with his acquittal on the charge of

possession of a weapon during the commission of the aggravated assault on Wicker.

There is no merit to these claims. The hijacking and kidnapping convictions were supported by different and additional facts from those supporting the conviction for aggravated assault, so there was no merger of the offenses as a matter of fact. *Davis v. State*, 214 Ga. App. 360, 361 (448 SE2d 26) (1994). Moreover, even if Freeman's acquittal on the possession of a weapon charge was inconsistent with his conviction on another charge, the inconsistency is not a ground for reversal of the conviction. *Kimble v. State*, 236 Ga. App. 391 (512 SE2d 306) (1999).

7. Freeman contends that his convictions for the offenses of aggravated assault and kidnapping against Jackson must be reversed because they are inconsistent with his acquittal on charges of armed robbery against Carroll, aggravated assault against Wicker and Carroll, kidnapping of Carroll, and possession of a weapon during the aggravated assault on Carroll. As stated in Division 6 above, any inconsistency between convictions on some charges and acquittal on others provides no grounds for reversal of the convictions. *Kimble*, 236 Ga. App. 391.

8. Finally, Freeman argues that the trial court erred by failing to factually merge his conviction for speeding into his conviction for reckless driving. There was no error because the record shows different facts established each offense. OCGA § 16-1-6 (1).

*Judgment affirmed in Case No. A01A0011. Judgment affirmed in part and reversed in part in Case No. A01A0010. Eldridge and Miller, JJ., concur.*

DECIDED APRIL 25, 2001.

*Stanley W. Schoolcraft III*, for appellant (case no. A01A0010).
*James W. Bradley*, for appellant (case no. A01A0011).
*Robert E. Keller, District Attorney, Jack S. Jennings, Assistant District Attorney*, for appellee.