## A01A1805. ASKEW v. THE STATE.
(564 SE2d 720)

ANDREWS, Presiding Judge.

Jessie James Askew, Jr. was found guilty by a jury of armed robbery of a Morrison's cafeteria in Warner Robins. Askew was also found guilty of three counts of kidnapping and three counts of aggravated assault committed against cafeteria employees during the robbery, along with three counts of possession of a firearm during the commission of these crimes. For the following reasons, we affirm the judgment entered on the convictions.

---

[2] (Emphasis supplied.) OCGA § 16-8-7 (a).
[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. The evidence was sufficient to support Askew's conviction on all of the charges. The State presented evidence that two robbers carrying firearms and wearing masks to conceal their identities entered the rear door of the business, forced employees at gunpoint into a walk-in cooler, and took over $4,000 from the business. Although the robbers fled the scene before police arrived, a Morrison's employee knew and recognized Fernando Jackson as one of the robbers despite the mask and identified him to police. Jackson was arrested, admitted his involvement, and testified pursuant to a plea agreement with the State that Askew was the other robber. There was evidence that Askew worked at Morrison's until shortly before the robbery. DeShaun Maine, another Morrison's employee, was produced as a witness by the State and was expected to testify that he knew Askew and recognized him as one of the robbers, as he had previously testified for the State before the grand jury. At trial, however, Maine changed his testimony and said he did not recognize Askew as one of the robbers. Evidence of Maine's grand jury testimony identifying Askew as one of the robbers was introduced for purposes of impeachment.

The State also produced circumstantial evidence implicating Askew in the robbery. There was evidence that Askew and Jackson lived in the same house with Jackson's father. Jackson's father testified that Askew's girlfriend came to the house shortly after the robbery and located and took what appeared to be a large sum of money hidden in a freezer at the house. Other evidence showed that Askew had access to his girlfriend's car on the day of the robbery and that a car similar to the girlfriend's car was seen leaving the scene of the robbery. When police searched the girlfriend's car, they found ammunition in the car suitable for the type of firearms seen used in the robbery. Evidence also showed that Askew owned firearms similar to those used in the robbery.

The evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Askew was guilty of the charged offenses. OCGA §§ 16-8-41; 16-5-40; 16-11-106; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Askew contends the trial court erroneously excluded evidence impeaching the testimony given by Jackson.

Prior to trial, Maine, who knew both Askew and Jackson, received a letter by mail purportedly written by Jackson from jail stating that Jackson was falsely accusing Askew of being involved with him in the robbery. The letter states that Jackson and another named individual committed the robbery and that Jackson was falsely accusing Askew as revenge for prior difficulties he had with Askew. After the letter was brought to the attention of defense counsel and the prosecutor, the State filed a motion in limine to exclude

the letter claiming it was not authentic and that Jackson denied having written it.

A pre-trial hearing was held on the motion at which Askew presented evidence which he claims authenticated the letter and supported his contention that the letter was admissible to impeach Jackson's testimony. Although Askew claims the trial court granted the State's motion and excluded the letter, the record does not support this claim. The record shows only that the trial court stated it was not inclined to admit the letter. The court further stated, however, that "I'm not saying at this point that it is absolutely to be excluded because I don't know . . . what the total circumstances are going to dictate . . . [a]nd there may be something else that says to me that it should come in. . . ." There is nothing in the record showing that the trial court subsequently excluded the letter or that Askew attempted to introduce the letter during the trial. Accordingly, this issue was not preserved for appellate review. *Cunningham v. State*, 240 Ga. App. 92, 96 (522 SE2d 684) (1999).

3. Askew contends the trial court erred by refusing to charge the jury that a witness for the State violated the rule of sequestration by discussing testimony with another witness.

While cross-examining Officer Hudgens, defense counsel elicited testimony that the officer discussed aspects of his upcoming testimony with another officer who had previously testified for the State in the case. At the request of defense counsel, the trial court allowed a proffer of testimony from Officer Hudgens outside the presence of the jury detailing the nature of the discussion. The proffer showed that the discussion was about whether the officers had seen anyone leaving Morrison's when they arrived at the scene of the robbery, a point which was not raised in Hudgens's testimony. Defense counsel made no attempt to introduce the proffered testimony before the jury, but requested that the trial court instruct the jury there had been a violation of the rule of sequestration and also instruct the jury "about the question he [Hudgens] and the officer talked about."

We find no error in the trial court's refusal to give the requested instruction regarding the nature of the question discussed. This was not an obvious violation of the sequestration rule where a witness whose credibility was at issue because of the violation had been sitting in the courtroom during the trial, so the appropriate remedy was to admit testimony before the jury as to the violation. *Childress v. State*, 266 Ga. 425, 432 (467 SE2d 865) (1996). Testimony was admitted before the jury on Hudgens's cross-examination that a violation had occurred, but no attempt was made to admit the proffered evidence regarding the actual question the officers discussed. Accordingly, it would have been improper for the trial court to give what would have amounted to hearsay testimony regarding the question

discussed by the officers in the course of the requested charge. Id. Although Askew was entitled to request the trial court to instruct the jury that the violation could be considered in weighing the witness's credibility, no request was made for this instruction and the trial court was not required to give it sua sponte. *Quijano v. State*, 271 Ga. 181, 183 (516 SE2d 81) (1999). Moreover, even if such a request had been made and the trial court erroneously refused to give the instruction, the testimony involved was not so crucial to the State's case that harm requiring reversal could be shown.

4. Askew claims the trial court erred in admitting an incriminating statement he gave to police because he was not advised of his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

We find no error in the trial court's conclusion that the statement was admissible without *Miranda* warnings because Askew was not in custody when he gave it. A suspect is entitled to *Miranda* warnings only when subjected to State interrogation while in custody or deprived of freedom in any significant way. *Driver v. State*, 248 Ga. App. 439, 440 (546 SE2d 549) (2001). Askew voluntarily came to the police station after hearing that he was a suspect in the robbery. Upon request, he gave a written statement denying involvement in the robbery and giving his whereabouts on the day of the robbery.[1] The officer who requested the statement testified that Askew was not under arrest at the time and was free to leave. Even if, as Askew contends, he was a prime suspect when he came to the police station and police had probable cause to arrest him, this does not compel the conclusion that he was in custody at the time he gave the statement. *Hendrix v. State*, 230 Ga. App. 604, 605 (497 SE2d 236) (1997). There was evidence showing that Askew was not in custody, and the trial court's admission of the statement as voluntary and noncustodial was not clearly erroneous. Id. at 606.

5. The trial court did not err by refusing to grant a new trial on the basis of newly discovered evidence.

A year after the trial, Jackson, who testified at the trial that he and Askew committed the robbery, recanted his testimony and gave an affidavit stating that he lied at the trial, that Askew did not participate in the robbery, and that he wrote the letter to Maine referenced in Division 2, supra, stating that he was falsely accusing Askew.

> That a material witness for the State, who at the trial gave direct evidence tending strongly to show the defendant's

---

[1] The statement was later introduced by the State at trial because it was inconsistent with alibi testimony produced by Askew.

guilt, has since the trial made statements even under oath that [his] former testimony was false, is not cause for a new trial. Declarations made after the trial are entitled to much less regard than sworn testimony delivered at the trial. This difference in value must be recognized, so long as there has been no conviction of perjury. Provision is made for setting aside verdicts resting on perjury, but there must first be a conviction. The only exception to the rule against setting aside a verdict without proof of a material witness' conviction for perjury, is where there can be no doubt of any kind that the State's witness' testimony in every material part is purest fabrication.

(Citations and punctuation omitted.) *Johnson v. State*, 236 Ga. App. 764, 765 (1) (513 SE2d 291) (1999); *Drake v. State*, 248 Ga. 891, 894 (287 SE2d 180) (1982) (post-trial statement by a State's witness that his trial testimony was false is not grounds for a new trial). There is no evidence that Jackson has been convicted of perjury, and Askew has presented no other evidence showing there is no doubt that Jackson's testimony at the trial was "pure fabrication." The trial court properly denied the motion.

6. The trial court did not abuse its discretion by ruling that defense counsel could not continue to cross-examine Jackson about an alleged improper conversation he had with the prosecutor after Jackson denied during the cross-examination that any such conversation occurred. *Moore v. State*, 251 Ga. 499, 501 (307 SE2d 476) (1983). Askew proffered nothing showing that a more extensive inquiry could produce relevant evidence despite Jackson's flat denial. See *Johnson v. State*, 270 Ga. 234, 235 (507 SE2d 737) (1998).

7. Askew claims the trial court erred in failing to grant his motion for a new trial on the basis that the State engaged in misconduct by: (1) telling Jackson to lie at trial and allowing him to give false testimony, (2) improperly withholding the taped statement of a witness which contained exculpatory evidence, and (3) placing Askew's mother on its witness list for the sole purpose of using the rule of sequestration to prevent her from being in the courtroom to support her son.

Jackson testified at Askew's trial that he and Askew committed the robbery, and on cross-examination by defense counsel, he denied meeting with prosecutors and being told to give false testimony. The allegations that a prosecutor told Jackson to lie at Askew's trial and knowingly allowed him to give false testimony are based on the affidavit given by Jackson a year after the trial in which he recanted his trial testimony. For the reasons stated in Division 5, supra, the affidavit was not a sufficient basis for the grant of a new trial.

As to the taped statement, the record shows that the State provided a copy of the statement to defense counsel as soon as it was discovered, and by agreement of the State and defense counsel the jury heard the entire statement. There is no evidence that the State engaged in any misconduct and no evidence that Askew's defense was prejudiced.

Finally, the State gave a reasonable explanation as to why it listed Askew's mother as a potential witness. There was no evidence of misconduct.

The trial court did not err by denying the motion for new trial.

8. Askew contends the trial court erred by allowing a police officer to give hearsay testimony based on the statement of Askew's girlfriend, who was a nontestifying co-defendant.

A police officer testified on direct examination that from sources other than Jackson he learned that ammunition found in the girlfriend's car was put in the car during the approximate period of time that Askew and Jackson used the car in the robbery. The State concedes that, apart from getting this information from Jackson, the officer's knowledge was based on hearsay statements made by Askew's girlfriend. Even if this testimony was erroneously admitted, we find no harmful error. It was cumulative of testimony given by Jackson, and, excluding the inadmissible hearsay, other evidence against Askew was sufficient to support the convictions. *Livingston v. State*, 268 Ga. 205, 210-212 (486 SE2d 845) (1997).

9. Askew, who is African-American, contends the trial court erred in rejecting his claim under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), that the State violated his Equal Protection Clause rights by exercising its peremptory strikes during jury selection to intentionally exclude African-Americans from the jury on the basis of race.

A *Batson* challenge initiates a three-step process requiring first that the party challenging the strikes establish a prima facie inference that the strikes were exercised with racially discriminatory intent. If a prima facie case of racial discrimination is established, under the second and third steps, the burden of production shifts to the proponent of the strikes to give race-neutral reasons for the strikes, and the trial court then considers the reasons given and decides whether the challenger has proven discriminatory intent. During this process, the burden of persuasion as to discriminatory intent does not shift from and remains with the challenger.

*Griffeth v. State*, 224 Ga. App. 462, 463 (2) (480 SE2d 889) (1997). We need not address Askew's claim that the trial court erred by conclud-

ing he failed to establish a prima facie case of racial discrimination. Even though the trial court reached this conclusion, it nevertheless required the State to give race-neutral reasons for exercising three of its six strikes against African-American potential jurors.

The State struck one juror because he did not give honest answers to questions regarding prior arrests, the second juror because he had a personal relationship with one of Askew's attorneys, and the third juror because she did social work for a state agency. The State expressed concerns that the first juror may be biased against the State because of negative involvement with law enforcement, that the second juror would favor Askew because he knew one of his attorneys, and that the third juror may be favorable to the defense because of her involvement in social work. These were clear and reasonably specific explanations for the strikes based on factors other than race and thus satisfied the requirement to give race-neutral reasons. *Alford v. State*, 224 Ga. App. 451, 457-458 (480 SE2d 893) (1997); *Haynes v. State*, 234 Ga. App. 272, 276-277 (507 SE2d 151) (1998); *Carter v. State*, 249 Ga. App. 354, 356 (548 SE2d 102) (2001). The trial court did not err in finding the State's strikes were exercised without racially discriminatory intent and in denying the *Batson* claim.

10. There is no merit to Askew's contention that he was improperly convicted in violation of OCGA § 24-4-8 on the uncorroborated testimony of Jackson, who claimed to be his accomplice. In addition to Jackson's testimony that he and Askew committed the robbery, the State produced ample corroborating evidence. See Division 1, supra.

11. Contrary to Askew's contention, the trial court properly sentenced him to life imprisonment without parole. Based on evidence that Askew had four previous felony convictions, he was sentenced pursuant to the recidivist provisions of OCGA § 17-10-7 (c) which provides:

> [A]ny person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state other than a capital felony must, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

OCGA § 16-8-41 (b) provides that "[a] person convicted of the offense

of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years." OCGA § 16-8-41 (d) provides that "[a]ny person convicted under this Code section shall, in addition, be subject to the sentencing and punishment provisions of Code Sections 17-10-6.1 and 17-10-7." It follows that the trial court was mandated in this case to sentence Askew to life imprisonment without parole. *Howard v. State*, 233 Ga. App. 724-725 (505 SE2d 768) (1998).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED FEBRUARY 15, 2002 —
RECONSIDERATION DENIED MARCH 7, 2002 — ▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

*Rodney E. Davis, Eugene Felton, Jr.*, for appellant.
*Kelly R. Burke, District Attorney, Amy E. Smith, Assistant District Attorney*, for appellee.