A06A0030. MIDDLEBROOKS v. THE STATE.
(627 SE2d 154)

BLACKBURN, Presiding Judge.

Following a jury trial, William Middlebrooks appeals his convictions of twelve counts of forgery in the second degree, nine counts of financial transaction card theft, and one count of identity fraud, contending that: (1) the trial court erred in denying his motion to suppress evidence obtained from a search of his residence, (2) the nine counts of financial transaction card theft should have been merged into a total of only two crimes, (3) the statute under which he was convicted of financial transaction card theft is unconstitutional, (4) the trial court improperly relied on hearsay evidence to support his convictions of forgery in the second degree, and (5) venue was not proper as to the identity fraud and financial transaction card theft convictions. We affirm in part and reverse in part.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

*Eady v. State.*[1] See *Jackson v. Virginia.*[2] So viewed, the record shows that First Union Bank discovered that forged checks had been written on several customer accounts. The bank traced the compromised accounts to a bank document that lists First Union accounts with large balances. Middlebrooks's co-defendant, who was living with Middlebrooks, had been twice arrested for charges based on

---

[1] *Eady v. State*, 256 Ga. App. 696 (569 SE2d 603) (2002).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

forged checks corresponding to customers on the compromised First Union account list.[3] Seeking the missing account list, police obtained a warrant to search Middlebrooks and his co-defendant's residence.

During the ensuing search, officers found the First Union list and ten counterfeit checks corresponding to accounts on the compromised First Union account list. They also found credit cards, forged and real identification cards, blank check stock, an identification card making machine, and plastic for making identification cards. None of the credit cards or identification cards were in Middlebrooks's or his co-defendant's name.

1. Prior to trial, Middlebrooks unsuccessfully moved to suppress the evidence found during the search. Middlebrooks contends that the trial court erred in not granting his motion to suppress, arguing that: (a) the affidavit supporting the search warrant contained false statements, in that it listed items as being located at Middlebrooks's residence that were not found during the search, and (b) the reviewing judge improperly relied on an affidavit containing information from an informant. We disagree.

(a) *False statements.* The relevant standard regarding probable cause affidavits and their statements is as follows:

> In determining probable cause for the issuance of a search warrant, the issuing magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Browner v. State.*[4] "An affidavit is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause." *Smithson v. State.*[5]

Here, the affiant, Officer Sukhanath, stated that she had "reason to believe" certain items were located at Middlebrooks's residence.

---

[3] This information was presented at the suppression hearing, but not to the jury.

[4] *Browner v. State*, 265 Ga. App. 788, 789 (1) (595 SE2d 610) (2004).

[5] *Smithson v. State*, 275 Ga. App. 591, 595 (2) (621 SE2d 783) (2005).

The fact that some of the items listed in the affidavit were not found at the residence does not make the affiant's statement false.

Nevertheless, even if this statement were false, "[i]n the case of false information included in the affidavit supporting a search warrant, or where material information is omitted, the rule is that the false statements be deleted, the omitted truthful material be included, and the affidavit be reexamined to determine whether probable cause exists to issue a warrant." (Punctuation omitted.) *Browner*, supra at 790 (1). Indeed, a separate portion of the affidavit lists "facts tending to establish probable cause" and does not include any of the information Middlebrooks challenges in his appeal. The unchallenged portion establishing probable cause describes in detail Middlebrooks's connection with his co-defendant and his co-defendant's connection with the fraudulent activity on the First Union customer accounts. The information includes a description of the events surrounding his co-defendant's prior arrests for fraudulently using account information from the First Union list, and her continued use of the account information across four other states. According to the affidavit, Middlebrooks and his co-defendant traveled together and resided together. Based on this information, the reviewing judge had a substantial basis for issuing the warrant to search Middlebrooks's residence. See *Browner*, supra at 791 (1).

(b) *Information from an informant.* Middlebrooks also contends that the court issuing the search warrant improperly relied on an affidavit containing information from an informant. We disagree.

Generally, where an affidavit relies on information from a confidential informant, "[t]he affidavit must set forth sufficient facts from which the magistrate or judge can independently determine the reliability of both the information and the informant." (Punctuation and emphasis omitted.) *State v. McKendree.*[6] Here, the affidavit disclosed the identity of the informant, who was a First Union investigator. The affidavit showed that Officer Sukhanath had been working with the investigator to resolve the case, and information provided by the bank investigator was based on her own observation and was corroborated by Officer Sukhanath's preliminary investigation prior to seeking the search warrant. Under these circumstances, reliance on the affidavit was not error. See *State v. McKendree*, supra.

2. Middlebrooks next contends that nine counts of financial transaction card theft should have been merged into two crimes. We disagree.

During the search of Middlebrooks's residence, officers found nine financial transaction cards bearing the names of two victims.

---

[6] *State v. McKendree*, 188 Ga. App. 290, 291 (372 SE2d 673) (1988).

Middlebrooks was charged with nine counts of financial transaction card theft under OCGA § 16-9-31 (a) (1), which provides in relevant part: "A person commits the offense of financial transaction card theft when . . . [h]e . . . withholds a financial transaction card from the person, possession, custody, or control of another without the cardholder's consent."

> Under Georgia law, one crime is included in another as a matter of fact if it is established by proof of the same or less than all of the facts used to prove the other. If the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact.

(Footnote omitted.) *Holloway v. State*.[7] Accordingly, "[s]eparate offenses supported by different facts do not merge as a matter of law." *McGuire v. State*.[8]

As each withheld card was distinct and bore a different number or expiration date, it was not error to charge Middlebrooks with a separate count of financial transaction card theft, i.e., "withhold[ing] *a* financial transaction *card*," for each card withheld. (Emphasis supplied.) OCGA § 16-9-31 (a) (1). We note that "[a] defendant who takes multiple items from a victim in one transaction cannot be convicted of multiple robberies, even though the prosecution arguably uses different evidence to prove each taking." *Holloway*, supra at 504 (3). However, Middlebrooks was not charged with robbery; instead, he was charged under OCGA § 16-9-31 (a) (1), which delineates the criminal act as the withholding of a single card. Here, each card stood as proof of a separate act of withholding a financial transaction card. Accordingly, this enumeration is without merit.

3. Middlebrooks next contends that the statute under which he was convicted of financial transaction card theft, OCGA § 16-9-31, is unconstitutional, in that it improperly shifts the burden of proof to the defendant. We disagree.

Middlebrooks correctly states that the burden of proof is improperly shifted to the defendant by OCGA § 16-9-31 (d), which provides:

> When a person has in his possession or under his control two or more financial transaction cards issued in the names of persons other than members of his immediate family or without the consent of the cardholder, such possession shall

---

[7] *Holloway v. State*, 269 Ga. App. 500, 503-504 (3) (604 SE2d 844) (2004).

[8] *McGuire v. State*, 266 Ga. App. 673, 678 (3) (598 SE2d 55) (2004).

be prima-facie evidence that the financial transaction cards have been obtained in violation of subsection (a) of this Code section.

In *Mohamed v. State*,[9] the Supreme Court of Georgia held that this provision improperly shifted the burden of proof to the defendant charged with a violation of OCGA § 16-9-31 (a). However, in so holding, the Court severed OCGA § 16-9-31 (d) from the rest of the statute and stated that "the remainder of OCGA § 16-9-31 is to be given full effect." *Mohamed*, supra at 709 (1). Here, there was no reference to OCGA § 16-9-31 (d) in the jury charge, and the prosecution did not otherwise rely on that provision. Accordingly, we discern no error as to Middlebrooks's conviction under OCGA § 16-9-31 (a).

4. Middlebrooks next contends that the trial court erred in relying on hearsay testimony to support his convictions for forging eleven checks and one state identification card. We disagree.

Middlebrooks was convicted of forgery in the second degree under OCGA § 16-9-2 (a), which provides:

> A person commits the offense of forgery in the second degree when with the intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority.

The forged checks bore two names: the account holder from the First Union list and a name from a forged identification card. The State offered hearsay testimony that the second name on the checks did not match the authentic names on the account. This statement is not probative evidence that the checks were forged, because hearsay, even unobjected to, proves nothing. *Rokowski v. Gilbert*.[10] However, the forged card and checks were admitted as evidence, and there was overwhelming and uncontroverted competent evidence that the checks bore the name on the identification card and that the identification card was in fact forged. There was also properly admitted evidence that officers found blank check stock and an identification card making machine in Middlebrooks's residence. Therefore, given the overwhelming evidence that the checks and identification card were

---

[9] *Mohamed v. State*, 276 Ga. 706, 708 (1) (583 SE2d 9) (2003).
[10] *Rokowski v. Gilbert*, 275 Ga. App. 305, 315 (9) (620 SE2d 509) (2005).

forged, any reliance by the jury on the improper hearsay testimony was harmless. See *Cook v. Huff*;[11] *Heard v. State*.[12]

5. Finally, Middlebrooks contends that venue was not proper as to his convictions of financial transaction card theft and identity fraud. We agree only in part.

Under the Georgia Constitution, "all criminal cases shall be tried in the county where the crime was committed." Ga. Const. 1983, Art. VI, Sec. II, Par. VI.

> Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt. Proof of venue is a part of the State's case, and the State's failure to prove venue beyond a reasonable doubt renders the verdict contrary to law, without a sufficient evidentiary basis, and warrants reversal.

(Punctuation and footnotes omitted.) *Jones v. State*.[13]

"[S]tudying the key verbs which define the criminal offense in the statute is helpful in determining venue in doubtful cases." (Punctuation omitted.) *State v. Johnson*.[14] Turning first to the financial transaction card theft, OCGA § 16-9-31 (a) (1) defines the offense, in relevant part, as follows: "[a] person commits the offense of financial transaction card theft when . . . [h]e . . . *withholds* a financial transaction card." (Emphasis supplied.) Therefore, because the evidence showed that the cards were found in Middlebrooks's residence where he had control of them and that his residence is in Fayette County where the trial was held, venue was proper in Fayette County as to the conviction of financial transaction card theft.

Turning next to the identity fraud conviction, the indictment accused Middlebrooks of unlawfully obtaining the victim's identity card under OCGA § 16-9-121 (1), which provides: "A person commits the offense of identity fraud when . . . he . . . [o]*btains* . . . identifying information of a person." (Emphasis supplied.) The identity fraud statute also contains a provision addressing the county of offense:

> [I]n a proceeding under this article, the crime will be considered to have been committed in any county where the

---

[11] *Cook v. Huff*, 274 Ga. 186, 188-189 (3) (552 SE2d 83) (2001).

[12] *Heard v. State*, 274 Ga. 196, 200 (6) (552 SE2d 818) (2001).

[13] *Jones v. State*, 272 Ga. 900, 901-902 (2) (537 SE2d 80) (2000).

[14] *State v. Johnson*, 269 Ga. 370, 372 (2) (499 SE2d 56) (1998).

person whose means of identification or financial information was appropriated resides or is found, or in any county in which any other part of the offense took place, regardless of whether the defendant was ever actually in such county.

OCGA § 16-9-125. Therefore, under this provision, venue would be proper in the county in which the victim resides or in the county in which any part of the offense took place. We find no evidence of either.

Here, the trial was held in Fayette County, where Middlebrooks resided. The victim testified that she resided in Union City, but there was no evidence, nor did the trial court take judicial notice of, the county in which the victim resided. The victim testified that she noticed her wallet missing after riding a MARTA train. Her card was found in Middlebrooks's residence in Fayette County, but there was no evidence as to how or where Middlebrooks actually *obtained* her card. Therefore, with respect to the single count of identity fraud, we hold that venue was not proven beyond a reasonable doubt and we must reverse the conviction on this count alone. See *Graham v. State*.[15] "We note that retrial would not be barred by the Double Jeopardy Clause. See *Jones*, supra at 905 (4)." *Robinson v. State*.[16]

*Judgment affirmed in part and reversed in part. Mikell and Adams, JJ., concur.*

DECIDED FEBRUARY 9, 2006.

*Joseph J. Saia*, for appellant.
*Scott L. Ballard, District Attorney, Cindy L. Spindler, Assistant District Attorney*, for appellee.

---

[15] *Graham v. State*, 275 Ga. 290, 293 (2) (565 SE2d 467) (2002).
[16] *Robinson v. State*, 260 Ga. App. 186, 187 (581 SE2d 285) (2003).