A10A0882. DANIEL v. THE STATE.
(701 SE2d 499)

POPE, Senior Appellate Judge.

Following a jury trial, Garin Daniel was convicted of trafficking in cocaine and possession of marijuana and was sentenced as a recidivist. He argues on appeal that the evidence was insufficient to support his conviction. He further asserts that the trial court erred in denying his motion to suppress physical evidence and his custodial statement. Finally, he contends that his trial counsel rendered ineffective assistance of counsel in failing to demand a hearing on his motion to reveal the identity of a confidential informant, and that the trial court erred in refusing to conduct an inquiry into the identity of the confidential informant during the hearing on his motion for new trial. We find no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to uphold the jury's verdict. *Hall v. State*,

---

283 Ga. App. 266, 267 (641 SE2d 264) (2007). We do not reweigh the evidence nor do we judge witness credibility, but determine only whether the evidence presented was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt. Id.

So construed, the facts presented at trial showed that officers from the West Georgia Drug Task Force (the "Task Force") conducted a controlled purchase of cocaine from Daniel's residence using a confidential informant ("CI"). The CI purchased 3.5 grams of cocaine, and the entire transaction was audibly monitored and recorded by the Task Force officers.

The officers subsequently applied for and obtained a search warrant of Daniel's residence based in part on the controlled purchase. Upon execution of the search warrant, the officers detained both Daniel and an unidentified female who was with him at his residence. As Daniel was being moved to the front porch, he told one of the officers that the female had "nothing to do with any type of illegal activities" and requested that she be released. The statement was not made in response to any type of questioning by the officer.

Daniel was then advised of his *Miranda*[1] rights. When an officer thereafter asked him where the narcotics were hidden in the residence, Daniel invoked his right to have an attorney present prior to answering. Questioning was then terminated.

As the officers were preparing to do a sweep of the house with a canine, Daniel began to express concern as to whether the female would also be arrested and charged with a drug crime in the event that contraband was found. After it was explained that, upon finding contraband, the officers intended on arresting both Daniel and the female in the absence of a claim of ownership to the drugs, Daniel agreed to show the officers the location of the drugs. He thereafter directed the officers to a kitchen cabinet full of canned goods, in the middle of which Daniel identified a can with a false bottom that contained what was later determined to be 33.18 grams of 58.1 percent pure cocaine and 19.8 grams of marijuana. Daniel was then returned to the front porch where he pleaded with one of the officers to give him "a hit" of the cocaine. The officers also located $1,839 cash on top of a desk in the home, consisting mostly of small denominations.

1. The evidence set forth above was sufficient to sustain Daniel's convictions on trafficking in cocaine and possession of marijuana.

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

OCGA §§ 16-13-30 (j) (1);[2] 16-13-31 (a) (1) (A).[3] See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Weems v. State*, 295 Ga. App. 680, 682 (1) (673 SE2d 50) (2009); *Hall*, 283 Ga. App. at 267-268. Contrary to Daniel's argument, this result is not changed by the fact that Daniel had two witnesses testify that the CI had worked for Daniel as a handyman in his kitchen in the days prior to his arrest, thus giving the CI an equal opportunity to place the drugs in the cabinet. The jury was charged on the equal access defense and clearly rejected Daniel's version of events. The weighing of evidence and witness credibility lies exclusively with the trier of fact. *Hall*, 283 Ga. App. at 268.

2. Daniel further argues that the trial court erred in denying his motion to suppress physical evidence seized during the search of his residence because the application for the search warrant was not based upon probable cause. We disagree.

In order to justify the issuance of a search warrant, the state must set forth facts "sufficient to show probable cause that a crime is being committed or has been committed." OCGA § 17-5-21 (a). In determining whether probable cause exists, the task of the issuing magistrate

> is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

(Citation and punctuation omitted.) *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). See *Smith v. State*, 274 Ga. App. 106, 107 (1) (616 SE2d 868) (2005); *State v. Hockman*, 171 Ga. App. 504, 505 (320 SE2d 241) (1984). Our duty in reviewing the magistrate's decision is to determine whether there was a "substantial basis for concluding that probable cause existed." (Citation and punctuation omitted.) *Stephens*, 252 Ga. at 182.

The warrant application presented to the magistrate[4] in this case

---

[2] OCGA § 16-13-30 (j) (1) provides, in pertinent part, "[i]t is unlawful for any person to possess [or] have under his control . . . marijuana."

[3] OCGA § 16-13-31 (a) (1) provides, in pertinent part, "[a]ny person who knowingly sells . . . or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine, . . . commits the felony offense of trafficking in cocaine[.]" Subsection (a) (1) (A) sets forth the mandatory sentencing range applicable to Daniel's conviction based upon the amount of cocaine seized.

[4] No additional facts were provided to the magistrate at the time that the warrant

set forth that the affiant was an experienced member of the Task Force who had participated in numerous drug investigations and the execution of numerous search warrants; that within two days prior to the submission of the warrant application, the Task Force, which included the affiant, had conducted a controlled purchase of cocaine from Daniel's residence using a CI; that the CI had been searched for contraband and currency prior to the commencement of the operation; that the CI was fitted with a concealed transmitting device for the purpose of monitoring the transaction as it took place; that the Task Force officers had observed the CI travel to Daniel's residence from the predetermined location prior to the purchase and observed him travel back to the predetermined location after the purchase; that the CI was provided with $100 of official state funds to purchase 3.5 grams of cocaine from Daniel at his residence; that the CI gave Daniel $100 in exchange for 3.5 grams of cocaine; that the officers overheard the complete transaction of the purchase between the CI and Daniel as it occurred via the electronic monitoring device; that once the officers and the CI returned to the predetermined location, the CI relinquished the subject of his purchase, and a field test confirmed it was cocaine; and that the CI was once again searched for additional money and contraband with negative results. The affiant further set forth Daniel's criminal history, including a 1991 cocaine possession conviction and a 2003 cocaine trafficking charge for which he was acquitted. Additionally, the affiant stated that records from the county tax assessor's office confirmed that Daniel owned the residence at issue. And finally, the affiant stated that he had "reliable in[-]house intelligence" that Daniel "has possessed handguns and narcotics at his residence . . . in the recent past."

The information set forth in the application provided the magistrate with a "substantial basis for concluding that probable cause existed" to believe that contraband would be found in Daniel's residence. (Citation and punctuation omitted.) *Stephens*, 252 Ga. at 182. Indeed, the controlled buy under the observation of the officers alone was sufficient to establish probable cause so as to justify the issuance of a search warrant. See *Ibekilo v. State*, 277 Ga. App. 384, 385 (1) (626 SE2d 592) (2006); *Browner v. State*, 265 Ga. App. 788, 790 (1) (595 SE2d 610) (2004); *State v. Thomas*, 203 Ga. App. 623, 624-625 (417 SE2d 328) (1992). Contrary to Daniel's assertion, that the officers followed the CI to Daniel's residence and observed him approach the front door, after which they audibly monitored the transaction, was sufficient to establish that the transaction had

application was submitted; thus, the magistrate's issuance of the search warrant was based upon the information contained in the application itself.

occurred at Daniel's residence, despite the fact that the officers were unable to visually see the CI actually enter the residence. And we simply reject Daniel's contention that the officers were required to make more than one controlled purchase of drugs from his residence in order to establish that probable cause existed to believe that contraband could be found therein. See generally *Ibekilo*, 277 Ga. App. at 385 (1); *Browner*, 265 Ga. App. at 790-791 (1).

We likewise reject Daniel's argument that the warrant affidavit contained material misstatements that misled the magistrate. Specifically, Daniel argues that the magistrate was misled by the affiant's failure to state that the "reliable in[-]house intelligence" that Daniel "has possessed handguns and narcotics at his residence . . . in the recent past" was based upon the finding of handguns to which another person allegedly claimed ownership and only a minimal amount of suspected cocaine residue which allegedly was not tested to confirm its identity. Daniel further argues that the affiant's statement was misleading in that the incident had occurred over two years prior to the date in question.

"An affidavit is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause." (Citation, punctuation and footnote omitted.) *Middlebrooks v. State*, 277 Ga. App. 551, 552 (1) (a) (627 SE2d 154) (2006). We first note that, although Daniel's counsel argued that a person other than Daniel claimed ownership of the handguns found in Daniel's residence and that the seized cocaine residue was never tested, the record does not contain any evidence in support of those assertions. Regardless, the warrant application contained evidence sufficient to establish probable cause even in the absence of the challenged statements. See id. at 552-553 (1) (a) ("[I]n the case of false information included in the affidavit supporting a search warrant, or where material information is omitted, the rule is that the false statements be deleted, the omitted truthful material be included, and the affidavit be reexamined to determine whether probable cause exists to issue a warrant.") (citation and punctuation omitted). It follows that the trial court did not err in failing to suppress the physical evidence seized during the search of Daniel's residence. See *Browner*, 265 Ga. App. at 790-791 (1); *State v. Donaldson*, 281 Ga. App. 51, 54-55 (635 SE2d 345) (2006).

3. Daniel further argues that his act of showing the Task Force officers the location of the narcotics was the result of unlawful interrogation after he had invoked his right to counsel. To this end, Daniel does not dispute that the interrogating officer's questioning of him ceased after he invoked his right to counsel, nor does he deny that

it was him who reinitiated conversation with the officer at a later point in time. He nonetheless argues that, after he inquired as to the fate of his female friend, the officer took the opportunity to continue interrogating him without re-advising him of his *Miranda* rights.

A criminal suspect's right to remain silent and/or request for counsel made during a custodial interrogation is one that is "scrupulously honored," and any statement made in violation of that right cannot be introduced in the state's case-in-chief. (Punctuation and footnote omitted.) *Green v. State*, 275 Ga. 569, 572 (2) (570 SE2d 207) (2002).

> An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

(Citation and punctuation omitted.) *Mulvaney v. State*, 281 Ga. App. 620, 621-622 (636 SE2d 762) (2006). The trial court is not required, however, to exclude voluntary statements made by an accused that are not the product of a custodial interrogation. Id. In this context, a "custodial interrogation" consists of

> express questioning of a person in custody or its functional equivalent[,] that is, any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

(Citation and punctuation omitted.) *Walton v. State*, 267 Ga. 713, 717 (4) (482 SE2d 330) (1997).

The trial court conducted a hearing and concluded that Daniel's "physical statement" of showing the officers the location of the contraband was not done in response to questioning by any law enforcement officers. Rather, the trial court concluded that the statement was "freely and voluntarily" given after an officer responded to questions posed by Daniel expressing concern for his female friend.

The record supports the trial court's determination. As admitted by Daniel, it was Daniel, not the officer in question, who initiated conversation by asking the officer about his intentions with respect to the female at his residence. And after the officer explained that they would both be arrested in the absence of a claim of ownership to any contraband found in the residence, the record shows that Daniel

voluntarily offered to direct the officers to the location of the narcotics. See *Oliver v. State*, 276 Ga. 665, 667 (2) (581 SE2d 538) (2003) ("[S]tatements volunteered by appellant and not in response to questioning seeking to elicit incriminating responses are not inadmissible."); *Walton*, 267 Ga. at 718 (4) ("[A]n accused's response to an officer's answer to a question posed by the accused is not the product of custodial interrogation."). It follows that the trial court's determination that Daniel's statement was given out of concern for his friend as opposed to being given in response to police questioning was not clearly erroneous. See *Walton*, 267 Ga. at 718 (4); *Ottis v. State*, 269 Ga. 151, 153-154 (2) (496 SE2d 264) (1998); *Mulvaney*, 281 Ga. App. at 621-622.

4. Finally, Daniel contends that his trial counsel rendered ineffective assistance of counsel by failing to demand a hearing on Daniel's motion to reveal the identity of the CI, and further that the trial court erred in refusing to conduct an inquiry into the identity of the CI during the hearing on Daniel's motion for new trial. Both of Daniel's claims fail, however, because it is undisputed that prior to the time of trial, Daniel definitively knew the identity of the CI. "It is axiomatic that harm as well as error must be established by an appellant in order to secure a reversal of his conviction." (Citation and punctuation omitted.) *Gilford v. State*, 296 Ga. App. 651, 655 (4) (673 SE2d 40) (2009). See also *Smith v. State*, 302 Ga. App. 222, 227-228 (3) (a) (690 SE2d 867) (2010); *Disharoon v. State*, 288 Ga. App. 1, 7 (2) (652 SE2d 902) (2007).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED SEPTEMBER 1, 2010 —
RECONSIDERATION DENIED SEPTEMBER 14, 2010.

*Jones, Morrison & Womack, Wallace C. Clayton II*, for appellant.
*Peter J. Skandalakis, District Attorney, David P. Taylor, Assistant District Attorney*, for appellee.