## A11A0970. MANZIONE v. THE STATE.

(719 SE2d 533)

DILLARD, Judge.

Following a stipulated bench trial, Elton Felix Manzione was convicted of 20 counts of sexual exploitation of children after law-enforcement officers executed a search warrant and seized from his home computer various images depicting young children engaged in sexually explicit conduct. Prior to trial, Manzione unsuccessfully moved to suppress the images, arguing that the affidavit supporting the search-warrant application was legally insufficient to support a finding of probable cause. Manzione argues that the trial court erred by denying his motion to suppress. For the reasons discussed infra, we disagree and affirm.

The facts of this case (as presented at the motion-to-suppress hearing) are undisputed. In May 2005, Yahoo! Inc.—a web portal and provider of various and sundry internet services—discovered four graphical images depicting young children engaged in sexually explicit conduct that had been uploaded to one of its online discussion boards (referred to as a Yahoo! Group). After identifying the internet protocol ("IP") address assigned to the computer from which the images were posted, Yahoo! utilized an internet database called "WHOIS" to establish that Charter Communications was the internet service provider supplying online access to the originating computer, and further discovered that the subject computer was located in Athens, Georgia.

In accordance with the mandates set forth in 42 U.S.C. § 13032 (b) (1),[1] the custodian of records at Yahoo! reported the offensive images and its subsequent findings—including the IP address for the originating computer—to the National Center for Missing and Exploited Children ("NCMEC") CyberTipline, a national clearinghouse for information about children believed to be missing or sexually exploited. As also required by 42 U.S.C. § 13032 (b) (1), NCMEC placed Yahoo!'s report and supporting documentation,

---

[1] 42 U.S.C. § 13032, which was in effect during the time period relevant to this case, provided that

> [w]hoever, while engaged in providing an electronic communication service or a remote computing service to the public, through a facility or means of interstate or foreign commerce, obtains knowledge of facts or circumstances from which . . . child pornography . . . is apparent, shall, as soon as reasonably possible, make a report of such facts or circumstances to the Cyber[Tipline] at the [NCMEC], which shall forward that report to a law enforcement agency or agencies designated by the Attorney General.

42 U.S.C. § 13032 (b). This statute has since been repealed and the mandatory reporting requirements are now codified in 18 U.S.C. § 2258A. See Providing Resources, Officers, and Technology to Eradicate Cyber Threats to Our Children ("PROTECT Our Children") Act of 2008, Pub. L. No. 110-401, Title V, § 501 (a), 122 Stat. 4243 (2008).

including copies of the offending images, onto a compact disc and forwarded it, unedited, to the Georgia Bureau of Investigation ("GBI").[2]

The case was then assigned to a GBI special agent who, upon receiving and reviewing all of the information forwarded by NCMEC, concluded that the subject images contained what appeared to be child pornography. Thereafter, the agent obtained a court order directing Charter Communications to provide the subscriber information for the account associated with the IP address that Yahoo! provided. Charter Communications complied with this order, identifying Manzione as the account subscriber and supplying the GBI with Manzione's home address (as well as additional identifying information associated with the account).

At the agent's request, a GBI analyst then used the GBI database to confirm Manzione's name, address, date of birth, social security number, and driver's license number. The agent also conducted a drive-by surveillance of Manzione's residence.

Armed with the foregoing information, the agent sought a search warrant for Manzione's residence, including all electronic devices that could possibly contain child pornography. And in support of the application, the agent submitted an affidavit outlining the information that she received from NCMEC and the findings of her subsequent investigation. The warrant issued, and the accompanying search resulted in the seizure of various images depicting prepubescent children engaged in sexual acts.

Manzione filed a motion to suppress the images, which the trial court denied. The trial court thereafter convicted Manzione on 20 counts of sexual exploitation of children following a stipulated bench trial. This appeal follows.

At the outset, we note that, in accordance with the Fourth Amendment to the United States Constitution, a search warrant may issue only upon "facts sufficient to show probable cause that a crime is being committed or has been committed . . . ."[3] And in determining whether probable cause exists, the issuing judge is required

> simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair

---

[2] Because the parties stipulated to the facts, neither the contents of the CD nor the images were included in the appellate record.

[3] OCGA § 17-5-21 (a).

> probability that ... evidence of a crime will be found in a particular place.[4]

Furthermore, in reviewing the issuance of a search warrant, we are charged with ensuring—considering the totality of the circumstances and giving substantial deference to the issuing judge's decision—that the judge had a "substantial basis" for concluding that probable cause existed.[5] With these guiding principles in mind, we now turn to Manzione's arguments in support of his enumeration of error.

(a) Manzione asserts that the trial court erred in denying his motion to suppress because the GBI agent's affidavit was legally insufficient to establish probable cause. Specifically, Manzione argues that the agent's affidavit was premised upon inadmissible hearsay and that NCMEC was an unreliable source, requiring the agent to independently identify and verify the credibility of the Yahoo! employee who discovered and reported the images prior to seeking a warrant. In support of his argument, Manzione relies on a disclaimer purportedly contained on one of the documents forwarded to the agent, which stated that "NCMEC neither investigates nor vouches for the accuracy of the information reported" to it.[6]

In the challenged affidavit, the agent averred that on October 25, 2005, NCMEC notified the GBI that the custodian of records at Yahoo! Inc. reported the discovery of graphical images containing child pornography posted to a Yahoo! Group and that NCMEC "confirm[ed] the existence" of the child pornography; that Yahoo! Groups allows people with similar interests to communicate with each other and to post pictures for others to view; and that Yahoo! monitors the postings for images that appear to be child pornography and, when discovered, reports such activity to NCMEC. The affidavit also noted that the offensive postings originated from a particular IP address, which it described as "the numeric address of a computer on the Internet"; that providers of internet services maintain logs to identify which customer account is assigned to a particular IP address at a particular moment in time; and that "NCMEC indicate[d] that WHOIS ... revealed the [subject] IP address to be operating out of Athens, Georgia" with Charter Communications functioning as the internet service provider. Finally, the affidavit detailed that the agent obtained a court order requiring Charter

---

[4] *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009) (punctuation omitted).

[5] *Whitten v. State*, 174 Ga. App. 867, 868 (1) (331 SE2d 912) (1985); *see Illinois v. Gates*, 462 U. S. 213, 238 (III) (103 SC 2317, 76 LE2d 527) (1983).

[6] The document is not contained in the record, but the agent testified to its existence at the motion-to-suppress hearing and confirmed the wording of the disclaimer.

Communications to produce the subscriber information for the account associated with the IP address on the date and time that the images were uploaded; that Charter Communications identified Manzione as the account subscriber and provided his home address and additional identifying information associated with the account; and that the agent confirmed Manzione's identity and address, and conducted drive-by surveillance of his residence.

During the motion-to-suppress hearing, the agent admitted that although she was provided the name and contact information of the Yahoo! employee who saw and reported the subject images, at no time did she communicate with that individual. The agent further admitted that she was unaware of whether anyone at the GBI confirmed the information obtained through the WHOIS database.

Consistent with NCMEC's disclaimer and the mandatory reporting statutory scheme, we agree with Manzione that NCMEC was nothing more than a pass-through entity between Yahoo! and the GBI. It follows, then, that the pertinent question is the degree to which the agent was authorized to rely on the information reported by Yahoo! and transmitted through NCMEC, unedited, to the GBI.

In considering this question, we note that this case is virtually indistinguishable from our recent opinion in *James v. State*,[7] where we reiterated that "hearsay can be the basis for issuance of a warrant so long as there is a substantial basis for crediting the hearsay."[8] And while the credibility of an anonymous source or a person of unknown reliability must be independently corroborated, "a law-abiding concerned citizen has a built-in credibility and is deemed to be reliable."[9] Thus, in *James* we concluded that when a corporate provider of web-based services—in that case Google—makes a report of criminal activity pursuant to its statutory reporting obligation set forth in 42 U.S.C. § 13032 (b) (1), it is the equivalent of one made from a law-abiding concerned citizen, and therefore is "afforded a preferred status insofar as testing the credibility of [the] information."[10] The GBI agent's failure in *James*

---

[7] 312 Ga. App. 130 (717 SE2d 713) (2011). The facts and arguments presented in *James* are strikingly similar to those in this case and, indeed, James was prosecuted in the same county by the same prosecutor, was represented by the same defense counsel, and was challenging an affidavit containing remarkably similar language.

[8] *James*, 312 Ga. App. at 133 (a) (punctuation omitted).

[9] *Penny v. State*, 248 Ga. App. 772, 775 (2) (547 SE2d 367) (2001) (punctuation omitted); *see also Slocum v. State*, 267 Ga. App. 337, 338 (599 SE2d 299) (2004) ("Where the information is provided to police by an informant who is either an identified interested citizen or an identified victim of a crime, there is a presumption of reliability."); *Miller v. State*, 155 Ga. App. 399, 400 (I) (A) (270 SE2d 822) (1980) ("[A] law-abiding citizen has a built-in credibility.").

[10] *James*, 312 Ga. App. at 134 (a) (punctuation omitted); *accord Whitten*, 174 Ga. App. at 868 (1) ("This [C]ourt has always given the concerned citizen informer a preferred status

to independently verify the credibility of the individual reporting employee therefore did not in and of itself render the search warrant application insufficient.[11]

We reach the same result here. While the agent "could have done a more thorough job investigating the information received by the GBI,"[12] she was entitled to presume the reliability of the Yahoo! report as transmitted through NCMEC without independently verifying the credibility of the Yahoo! employee who initially viewed the offensive images. And, crediting that report and otherwise considering the totality of the circumstances, the agent's affidavit provided the issuing judge a substantial basis for concluding that probable cause existed sufficient to issue the search warrant for Manzione's residence.[13]

(b) Manzione further argues that the affidavit was misleading in that it created a false impression that NCMEC investigated and verified the allegations Yahoo! reported. Manzione specifically focuses on the agent's averment that NCMEC "confirm[ed] the existence" of the child pornography posted on Yahoo! Groups and further asserts that the agent misrepresented that NCMEC, as opposed to Yahoo!, conducted the WHOIS search.

An affidavit supporting an application for a search warrant "is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause."[14] In the event that false information has been included in an affidavit, or when material information has been omitted, "the rule is that the false

insofar as testing the credibility of his information.").

[11] *James*, 312 Ga. App. at 134 (a). We note that our holding in that regard is consistent with the holdings of other jurisdictions that have examined this issue. *See generally United States v. Kling*, 2006 WL 1980179, at *6 (N.D. Iowa) (holding warrant affidavit supported finding of probable cause despite affiant's failure to include identity of Yahoo! employee who made NCMEC report and/or information regarding the employee's reliability); *State v. Woldridge*, 958 S2d 455, 458-59 (Fla. Dist. Ct. App. 2007) (affording AOL a presumption of reliability when reporting child pornography to NCMEC); *State v. Sisson*, 883 A2d 868, 879-81 (V) (B) (Del. Super. Ct. 2005) (same). *Cf. United States v. Cameron*, 729 FSupp.2d 418, 422 (II) (B) (D. Maine 2010) (holding that Yahoo! was not acting as a government agent, but rather as a private party interested in preventing the use of its services to commit crimes against children, when reporting child pornography to NCMEC).

[12] *James*, 312 Ga. App. at 134-135 (a).

[13] *Id.*; *see also Glass v. State*, 304 Ga. App. 414, 416 (1) (696 SE2d 140) (2010) (probable cause established by statement of concerned citizen despite that the affidavit lacked specific facts demonstrating the individual's veracity); *Chambliss v. State*, 298 Ga. App. 293, 295 (1) (679 SE2d 831) (2009) (affording credibility to an anonymous tip made to the Department of Family and Children Services out of concern for the welfare of a child). *Cf. Scott v. State*, 277 Ga. App. 126, 128 (2) (625 SE2d 526) (2006) (information from an unnamed concerned citizen provided, in part, probable cause to search vehicle).

[14] *Daniel v. State*, 306 Ga. App. 48, 52 (2) (701 SE2d 499) (2010) (punctuation omitted).

statements be deleted, the omitted truthful material be included, and the affidavit be reexamined to determine whether probable cause exists to issue a warrant."[15]

The affidavit in this case, although inartfully worded, is not misleading so as to taint the information it provided or to mislead the issuing judge into mistakenly believing that probable cause existed when it actually did not. Rather, it is apparent that, in context, the affidavit relayed the Yahoo! report as it had been received by the GBI (i.e., through NCMEC), which was acting in the role that it was congressionally mandated to perform. But even if we were to assume that the affidavit was misleading (thus omitting any language implying an independent investigation by NCMEC), and instead inserted language making it abundantly clear that no investigation had ever been conducted, it does not change the result in the case sub judice.

In light of our holding in Division (a), the Yahoo! employee who originally viewed the offensive images was afforded a presumption of reliability and no independent investigation into that individual's credibility was necessary.[16] It follows, then, that even if the agent had included in the affidavit an explicit disclaimer that NCMEC had not confirmed the veracity of that individual, it would not have resulted in a lack of probable cause to issue the search warrant.[17] Accordingly, the trial court did not err in denying Manzione's motion to suppress.

*Judgment affirmed. Mikell, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 16, 2011 — 

*James D. Crowe*, for appellant.

*Kenneth W. Mauldin*, District Attorney, *Jon R. Forwood*, Assistant District Attorney, for appellee.

---

[15] *Id.* (punctuation omitted).

[16] *See James*, 312 Ga. App. at 134 (a) ("[I]n making the disclosure to the NCMEC, the [web-service provider's] [e]mployee was a witness to a possible crime and acting in the role of a concerned citizen, who is afforded a preferred status insofar as testing the credibility of her information." (punctuation omitted)).

[17] *See James*, 312 Ga. App. at 135 (b) ("Even if we assume that the affidavit contains the misrepresentations and omissions identified by [appellant], and the affidavit is re-examined with the alleged false statements omitted and the truthful material included, the information conveyed to the judge issuing the warrant is substantially the same."); *see also Flewelling v. State*, 300 Ga. App. 505, 512 (2) (b) (685 SE2d 758) (2009) (holding that the material alleged to have been omitted from the warrant application was not material so as to impact a finding of probable cause); *Brogdon v. State*, 299 Ga. App. 547, 551-52 (1) (b) (683 SE2d 99) (2009) (same).