In the Supreme Court of Georgia

Decided:   September 22, 2014

S14A0808. RODRIGUEZ-NOVA v. THE STATE.

BLACKWELL, Justice.

Andres Luis Rodriguez-Nova was tried by a Gwinnett County jury and convicted of murder and false imprisonment, both in connection with the death of his girlfriend, Elba Mejia-Mesa. Rodriguez-Nova appeals, contending that the trial court erred with respect to both an evidentiary ruling and its instructions to the jury. He also contends that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] The crimes were committed on June 22, 2008. Rodriguez-Nova was indicted on September 4, 2008 and charged with malice murder, two counts of felony murder, aggravated assault, aggravated battery, and false imprisonment. His trial commenced on September 8, 2009, and the jury returned its verdict three days later, finding him guilty on all counts. Rodriguez-Nova was sentenced to imprisonment for life for malice murder and a consecutive term of imprisonment for ten years for false imprisonment. The verdict as to felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the remaining counts merged with the malice murder. Rodriguez-Nova timely filed a motion for new trial on September 14, 2009, and he amended it on October 26, 2011. The trial court denied the motion on December 12, 2013. Rodriguez-Nova had already filed a premature notice of appeal on May 25, 2012, which ripened upon the denial of his motion for new trial. See Hall v. State, 282 Ga. 294, 295 (1) (647 SE2d 585) (2007) (a premature notice of appeal is treated as effectively filed upon entry of the order denying the motion for new trial). The case was docketed in this Court for the April 2014 term and submitted for

1. Viewed in the light most favorable to the verdict, the evidence shows that Mejia-Mesa and Rodriguez-Nova lived together in a Norcross apartment and worked in the same dance club, she as a dancer, and he as a security guard. On June 22, 2008, her shift ended around 4:45 a.m., and although Rodriguez-Nova called a taxi for her, she and two other dancers who lived in the same apartment complex instead accepted a ride from a customer.

Later that morning, Rodriguez-Nova told his brother that he had killed Mejia-Mesa. Rodriguez-Nova then called 911 and was met by police officers, who found Mejia-Mesa's body in their apartment. Her wrist and ankles were bound with duct tape, and a doubled-over and knotted phone cord was wrapped around her neck. She had sustained numerous injuries and had died as a result of strangulation.

Rodriguez-Nova gave officers a statement in which he described what had happened in some detail. At the dance club, he had seen Mejia-Mesa dancing suggestively with the customer and kissing him. When Rodriguez-Nova arrived at the apartment around 5:30 a.m., he saw someone leaving and thought it was

decision on the briefs.

2

the customer, at which point he "had no consideration for her." Rodriguez-Nova entered the apartment, grabbed a knife, and was going to stab Mejia-Mesa. But when she begged him not to kill her and asked him to think about his children and hers, he told her that he would not kill her if she stayed calm. He bound her feet and hands, and she told him that she loved him, that they were going to get married, that she already had ordered the wedding rings, and that, if he stopped, she would not tell the police. He then told her that he was going to kill her anyway and turn himself in, if he did not kill himself. At some point, he sprayed her with pepper spray. He choked her with both hands, and she bled through her nose. When he saw that she was still breathing, he tied a cord around her neck — tightening it and knotting it twice so that it would not loosen — and choked her to death with the cord.

Rodriguez-Nova's defense at trial was that he was guilty only of voluntary manslaughter. But on appeal, he does not dispute that the evidence is legally sufficient to sustain his convictions. We nevertheless have independently reviewed the record, with an eye toward the legal sufficiency of the evidence. We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that

Rodriguez-Nova was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. We now consider the contention that the trial court erred when it overruled Rodriguez-Nova's timely objection to the admission of a recording of his 911 call. He argues that the State failed to properly authenticate the recording, insofar as the Spanish interpreter who assisted the 911 operator during the call did not testify, and the operator herself does not speak Spanish.[2] And Rodriguez-Nova points out that there was no showing that the interpreter was "unavailable" as an authenticating witness under former OCGA § 24-4-48.[3] Even so, an audio recording can be authenticated by the testimony of one party to the recorded conversation. See Hudson v. State, 273 Ga. 124, 127 (3) (538 SE2d 751) (2000); Allen v. State, 302 Ga. App. 190, 191 (1) (690 SE2d 492) (2010). In this case, the 911 operator reviewed the recording, identified it as a

---

[2] Although the parties have argued about the applicability of the "language conduit" rule, see Hernandez v. State, 291 Ga. App. 562, 566 (2) (a) (662 SE2d 325) (2008); Lopez v. State, 281 Ga. App. 623, 625 (1) (636 SE2d 770) (2006), that rule deals with the issue of hearsay, and Rodriguez-Nova did not base his objection at trial — nor does he base his appellate argument — on hearsay grounds.

[3] We note that the provisions of former OCGA § 24-4-48 were carried forward into the new Evidence Code and now can be found at OCGA § 24-9-923.

fair and accurate reproduction of the call with no additions or deletions, recognized her own voice, and identified the voice of the interpreter.[4] See Hudson, 273 Ga. at 127 (3); Allen, 302 Ga. App. at 191 (1). Her inability to understand the Spanish portions of the recorded conversation went to the weight to be given her testimony, not the sufficiency of the authentication of the recording. See Gambrel v. State, 260 Ga. 197, 200 (2) (391 SE2d 406) (1990) (witness was unable to fill in blanks left by transcriber); Pasuer v. State, 271 Ga. App. 259, 263 (2) (a) (609 SE2d 193) (2005) (part of the recording was inaudible), overruled on other grounds, Vergara v. State, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008). Consequently, the trial court did not abuse its discretion when it admitted the recording of the 911 call.[5] See Cook v. State, 273 Ga. 574, 575 (2) (543 SE2d 701) (2001); Allen, 302 Ga. App. at 191 (1).

3. We turn next to the claim that Rodriguez-Nova's trial lawyer was ineffective because he failed to subpoena a forensic biologist from the Georgia

---

[4] We note that another police communications employee testified as to the operation of the 911 system and the automatic recording of Rodriguez-Nova's call.

[5] Rodriguez-Nova also has briefly argued, at trial and in this appeal, that the State failed to lay a proper foundation for admission of the recording in that it presented no evidence of the chain of custody. But the chain of custody requirement does not apply to audio and video recordings. Gadson v. State, 263 Ga. 626, 627 (2) (437 SE2d 313) (1993).

5

Bureau of Investigation to testify that sperm was found in Mejia-Mesa's body. To prevail on a claim of ineffective assistance, Rodriguez-Nova must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Rodriguez-Nova must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Rodriguez-Nova must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See Kimmelman, 477 U. S. at 382 (II) (C). We conclude that Rodriguez-Nova has failed to carry his burden.

6

Rodriguez-Nova's lawyer expected the State to call the biologist, and the lawyer mentioned the expected evidence about the sperm during opening statement and closing argument. At the hearing on the motion for new trial, however, the lawyer indicated that he never planned to introduce that evidence himself because he did not want the jury to perceive it as an unnecessary direct attack on Mejia-Mesa. Although his strategy was to show that Rodriguez-Nova had acted in the heat of passion resulting from the serious provocation of observing evidence that she had just been unfaithful, the State did not even dispute that Rodriguez-Nova saw evidence of her unfaithfulness or that he was motivated as a result to kill her. After reviewing the record, we cannot say that the strategic decision not to call the biologist was so unreasonable that no competent attorney would have made it under similar circumstances. See Washington v. State, 294 Ga. 560, 566 (3) (755 SE2d 160) (2014); Johnson v. State, 282 Ga. 96, 97-98 (2) (646 SE2d 216) (2007); Aaron v. State, 275 Ga. App. 269, 271 (4) (a) (620 SE2d 499) (2005). The evidence supported the trial court's conclusion that the performance of Rodriguez-Nova's lawyer was not deficient, as he "outlined sound tactical reasons for proceeding as he did." Moreover, because the evidence of Mejia-Mesa's unfaithfulness was not in

dispute, Rodriguez-Nova failed to show a reasonable probability that the result of the trial would have been different but for his lawyer's failure to introduce evidence about the presence of sperm. See Hoffler v. State, 292 Ga. 537, 543 (5) (739 SE2d 362) (2013); Daniel v. State, 306 Ga. App. 48, 54 (4) (701 SE2d 499) (2010).

4. Last, we consider Rodriguez-Nova's contentions with respect to the jury instructions. He asserts that the trial court erred when it failed to give three of his requested charges and that a fourth charge, which the court did give, was in error. We will examine each of these assertions in turn.

(a) Citing Bogan v. State, 158 Ga. App. 1, 2 (279 SE2d 229) (1981), Rodriguez-Nova complains of the trial court's denial of his request to charge the jury that, "[i]n making a determination of whether any other reasonable hypothesis exists, the defendant's explanation must be taken into consideration insofar as it is consistent with the circumstantial evidence admitted." But Rodriguez-Nova did not testify at trial. See Upton v. State, 128 Ga. App. 547, 550 (2) (197 SE2d 478) (1973) (omission of this charge was not error because the jury could disbelieve the defendant's unsworn statement in part or in whole). The court fully and correctly covered the applicable principles of law when it

8

instructed the jury regarding the presumption of innocence and the State's burden of proof and when it then charged that, "[t]o warrant a conviction on circumstantial evidence, the proven facts must not only be consistent with the theory of guilt but also exclude every other reasonable theory other than the guilt of the accused." See former OCGA § 24-4-6[6]; Alford v. State, 224 Ga. App. 451, 456 (4) (480 SE2d 893) (1997); Upshaw v. State, 172 Ga. App. 671, 673-674 (4) (324 SE2d 529) (1984). And because Rodriguez-Nova's admissions of guilt following the shooting were direct evidence of his guilt, the State's case was not based solely on circumstantial evidence. See Brown v. State, 251 Ga. 598, 601 (4) (308 SE2d 182) (1983); Storey v. State, 205 Ga. App. 610, 612 (4) (422 SE2d 879) (1992). Consequently, assuming that the additional circumstantial evidence charge requested by Rodriguez-Nova is ever required, there certainly was no error in declining to give it in this case.

(b) Rodriguez-Nova next asserts that the trial court erroneously denied his request to instruct the jury that, "[w]here the State must rely upon the defendant's admission alone for an essential element of its case, and where the

---

[6] We note that the provisions of former OCGA § 24-4-6 were carried forward into the new Evidence Code and now can be found at OCGA § 24-14-6.

defendant's inculpatory statement is coupled with exculpatory matter, you cannot accept the inculpatory statement and reject the exculpatory matter." See Lewis v. State, 292 Ga. App. 257, 261 (1) (a) (663 SE2d 721) (2008). But this rule, as set out in Terry v. State, 243 Ga. 11, 12-13 (1) (252 SE2d 429) (1979), "does not apply where the [S]tate presents other direct or circumstantial evidence that contradicts the exculpatory part of the defendant's statement or testimony." Lewis, 292 Ga. App. at 262 (1) (a). See also Nettles v. State, 249 Ga. 787, 788-789 (1) (294 SE2d 492) (1982). Here, anything in Rodriguez-Nova's statement that could support his defense of voluntary manslaughter was contradicted by other evidence — including the medical examiner's testimony, physical evidence, and other portions of his statement — that his attack on Mejia-Mesa was of significant length and involved a number of different deliberate and cruel actions (during which she had the opportunity to explain why he should not kill her), that he changed his mind about whether and how to kill her, and that she sustained numerous injuries. See OCGA § 16-5-2 (a) ("if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge

10

and be punished as murder"); <u>Frezghi v. State</u>, 273 Ga. 871, 871 (1) (548 SE2d 296) (2001); <u>Goforth v. State</u>, 271 Ga. 700, 701 (1) (523 SE2d 868) (1999); <u>Lowe v. State</u>, 267 Ga. 410, 411 (1) (a) (478 SE2d 762) (1996). Accordingly, the trial court did not err when it declined to give Rodriguez-Nova's requested charge as to when a jury cannot reject exculpatory matter in a defendant's statement. See <u>Manor v. State</u>, 223 Ga. 594, 596 (11) (157 SE2d 431) (1967).

(c) Rodriguez-Nova also contends that the trial court erred when it failed to give his request to charge the jury on battery as a lesser included offense of aggravated battery and aggravated assault. But the trial court merged the aggravated battery and aggravated assault counts into the conviction for malice murder, and, therefore, any issue concerning the jury charge given in connection with those counts is moot. See <u>Parker v. State</u>, 282 Ga. 897, 899 (4) (655 SE2d 582) (2008). In any event, the trial court defined battery for the jury, the verdict form gave the jury the option of convicting Rodriguez-Nova of battery as a lesser included offense of aggravated battery, and Rodriguez-Nova does not explain how battery could have been a lesser included offense of aggravated assault in this case.

11

(d) Rodriguez-Nova finally complains about the trial court's charge that "[p]rovocation by words alone will, in no case, justify such excitement of passion sufficient to free the accused from the crime of murder or to reduce the offense to manslaughter when the killing is done solely in resentment of such provoking words."[7] He argues that this instruction was not supported by any evidence and that it complicated the issues for the jury. But the rule set forth in the charge is subsumed under the statutory definition of voluntary manslaughter in OCGA § 16-5-2 (a). See Aguilar v. State, 240 Ga. 830, 833 (4) (242 SE2d 620) (1978). See also Brooks v. State, 249 Ga. 583, 585-586 (292 SE2d 694) (1982). In that respect, the particular jury instruction of which Rodriguez-Nova complains was implicit in the statutory voluntary manslaughter instruction that was given pursuant to his request. See Williams v. State, 263 Ga. 135, 137 (6) (429 SE2d 512) (1993). And it was consistent in any event with the defense theory that Rodriguez-Nova was provoked by Mejia-Mesa's *conduct* with the customer from the dance club. The charge clarified for the jury that only such conduct — not her words alone — could make the crime voluntary

---

[7] This instruction is identical to a pattern charge on provocation by words alone. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.10.42 (4th ed. 2007, updated through January 2014).

manslaughter, and it was a correct and objective statement of the law. See Parker

v. State, 276 Ga. 598, 599-600 (4) (581 SE2d 7) (2003); Todd v. State, 274 Ga.

98, 101-102 (4) (549 SE2d 116) (2001).

Judgment affirmed. All the Justices concur.